UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

SANDRA E. AUSTIN,

                Plaintiff,             Case No.: 10-cv-14159
                                                  Honorable Patrick J. Duggan
v.                                           Magistrate Judge David R. Grand

MICHAEL ASTRUE,
Commissioner of Social Security,

                Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [7, 10]**

Plaintiff Sandra E. Austin brings this action pursuant to 42 U.S.C. § 405(g), challenging a final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [7, 10] which have been referred to this court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the court finds that the Administrative Law Judge's decision rests on the application of correct legal standards and is supported by substantial evidence. Accordingly, the court recommends that the Commissioner's motion for summary judgment [10] be granted, that Austin's motion for summary judgment [7] be denied, and that the Commissioner's findings be affirmed.

## II.  REPORT

### A.  Procedural History

On December 27, 2007, Austin filed applications for DIB and SSI, alleging disability as of October 30, 2007. (Tr. 94-104). Her claim was denied initially on March 18, 2008. (Tr. 50-57). Thereafter, Austin filed a timely request for an administrative hearing, which was held on June 19, 2009 before Administrative Law Judge John Rabaut (the "ALJ"). (Tr. 24-47). Austin, represented by attorney Mikel Lupisella, testified, as did vocational expert Michele Robb (the "VE"). (*Id.*). On October 13, 2009, the ALJ issued a written decision finding that Austin was not disabled. (Tr. 14-20). On August 12, 2010, the Appeals Council denied review, (Tr. 1), and Austin filed for judicial review of the final decision on October 18, 2010. [1].

### B.  Background[1]

#### *1.  Disability Reports*

In an undated disability report, Austin reported that "depression," as well as various physical conditions limited her ability to work. (Tr. 134). However, when asked to explain how her various conditions limited that ability, she confined her answer to her physical ailments. (*Id.*). She claimed that her conditions first interfered with her ability to work on October 30, 2007, that she became unable to work on that same date, but that she stopped working on December 6, 2007 due to her "medical conditions." (*Id.*). She indicated that she had been seen by a doctor related to her mental health concerns. (Tr. 136). Prior to stopping work, Austin had been employed as a housekeeper during November and December of 2007, and as a private care assistant for the elderly from March 2007 through October 2007. (Tr. 135). She had been a receptionist/scheduler at a nursing home during 2005 and was a nursing home supervisor for

---

[1] Because Austin's summary judgment motion addresses only her alleged mental impairments, the court limits its factual discussion and legal analysis to those issues.

2

twelve years prior to that. (*Id.*). In a field office disability report dated December 27, 2007, the interviewer observed no limitations in Austin's behavior, appearance, or grooming. (Tr. 131).

In a function report dated January 21, 2008, Austin reported that she lives "with family," and that after waking each day, she typically gets dressed, does household chores and cleaning, and reads. (Tr. 160). She plays games with her grandchildren, helps with supper and goes for walks in nice weather. (*Id.*). She reported not sleeping well at night. (*Id.*). In response to a question about what she was able to do before the onset of her conditions that she could no longer do, Austin answered: "I can still do things, just not as fast as I use [sic] to. I have more discomfort now." (Tr. 161). Austin indicated that she prepares her own meals, though not as often as she used to. (*Id.*). Similarly, she indicated that she can do all of the household chores that she did before her illnesses, but stated that what used to take a few hours now takes her half the day. (Tr. 162). She reported that she drives and goes for short walks. (Tr. 163). She shops for groceries, which takes her between 60 and 90 minutes to accomplish. (*Id.*). She indicated that she could handle her own finances, provided she had an income. (*Id.*). She reported enjoying scrapbooking, reading and genealogy, as well as talking with friends on the phone or over the computer. (Tr. 164). She indicated having no problems getting along with people, but indicated that she has no social life other than with her family and her use of the phone and computer. (Tr. 165).

When asked to identify functions that were impacted by her illnesses, Austin checked only items related to her physical abilities, such as lifting, bending and walking. (*Id.*) She did not indicate any problems with memory, completing tasks, concentration, understanding, following instructions, getting along with others, or talking. (*Id.*). She stated that her "attention is good," and that she follows instructions "fairly good." (*Id.*). She indicated no issues getting

3

along with authority figures, and that she handles stress and changes in her routine "OK." (Tr. 166). Austin stated that she sits on her bed a lot, and does not want to go places or be around people she does not know. (*Id.*). She indicated that she was out of her depression pills. (*Id.*).

In an undated disability appeals report, Austin reported only physical illnesses, though she did reference that she had been prescribed Prozac for depression. (Tr. 171, 173).

### 2. *Plaintiff's Testimony*

At the June 19, 2009 hearing before the ALJ, Austin testified that she lives with her brother, and his wife, and their twelve-year-old son, whom she babysat. (Tr. 29.). When asked about the alleged onset of her disability on October 30, 2007, Austin testified that she chose that date because that is when her alleged physical ailments and limitations made it impossible for her to perform her job in home care. (Tr. 29-30). Austin testified regarding her physical abilities and conditions, (Tr. 33-35, 38), as well as her depression. (Tr. 35-38). Although Austin testified that her energy level was "not terrible," she said she is "tired a lot," and thinks "some of it is due to depression…" (Tr. 35). She stated her belief that the Prozac medication "kind of makes [her] a little tired." (*Id.*). When asked how her depression impacts her cognitive functioning, Austin answered that she "get[s] confused a lot and [] my comprehension is bad…I have to be told 50 times before I get it…" (Tr. 37). She said she got "too confused" to perform her secretarial duties of scheduling and taking phone calls. (Tr. 37-38). Austin stated that she would work if she could, but stated that she simply cannot work any longer because of exhaustion-like symptoms. (Tr. 38) ("I get home and I get out of the car and I'm just huffing and puffing to the door…Talking, I'm finding talking I get out of breath.").

4

>    *3.    Medical Evidence*
>
>        *a.    Treating Sources*

On March 15, 2007, Dr. Brian Beck issued a report of his physical examination of Austin.  (Tr. 193).  Under the "Review of Systems…Psychiatric," there is a notation of "depression," with no further information.  (*Id.*).  Dr. Beck also saw Austin on May 7, 2007, but his related records did not reference any psychiatric information.  (Tr. 190).  On July 31, August 28, and October 30, 2007, Dr. Beck's progress notes had circled "depression" and "mood swings," and there was an indication that he placed Austin on Prozac.  (Tr. 187-89).

In February 2008, Dr. Beck completed a form for the South Carolina Vocational Rehabilitation Department concerning Austin's mental condition.  (Tr. 225).  Dr. Beck noted that Austin had no limitations in function due to a mental condition, and that she was able to relate and communicate adequately.  (*Id.*).  He also found that despite being "worried/anxious," Austin had intact and appropriate thoughts with good attention and memory.  (*Id.*).  Dr. Beck did not indicate that Austin had a "depressed" mood or affect.  (*Id.*).

Dr. Beck saw Austin in March, April and June of 2008.  (Tr. 242-244).  His progress notes had circled "depression" at the March and June 2008 visits, but not at the April 2008 visit.  (*Id.*).  At the June 2008 visit, Dr. Beck took Austin off Prozac and put her on Wellbutrin.  (Tr. 242).  The record contains no further documents related to Austin's mental state until June 16, 2009, when Dr. Beck completed a "Medical Source Statement (Mental)" check-the-box form for the SSA.  (Tr. 248).  Dr. Beck indicated that Austin was "markedly limited" in her ability to relate and interact with supervisors and co-workers, as well as in her ability to handle the stress of working an eight-hour day.  (*Id.*).  He found Austin was "moderately limited" in the following areas: (1) ability to understand, remember and carry out an extensive variety of technical or

complex instructions, (2) ability to understand, remember and carry out simple one-or-two step job instructions, (3) ability to deal with the public, and (4) ability to maintain concentration and attention for at least two hour increments. (*Id.*). He indicated that the Austin had been experiencing the foregoing limitations for "over 5 years." (*Id.*). Finally, Dr. Beck gave no indication that Austin lacked the ability to handle funds. (*Id.*).

On June 10, 2009, Austin completed an intake review form at New Passages mental health clinic. (Tr. 249, 256). Austin indicated that she was there to seek help for depression. (Tr. 249). She indicated that she had mood swings, feelings of hopelessness, helplessness and worthlessness, and memory problems. (Tr. 250). However, she also indicated that she was not anxious and did not have problems concentrating. (*Id.*). She denied having auditory and visual hallucinations. (*Id.*). Austin denied needing help with caring for herself. (Tr. 249). She also denied needing any help with a wide array of matters, including daily activities, friendships[2] and family relationships, self-development and personal/family enrichment, community activities, attitude, spirituality, personal advocacy, and transportation. (Tr. 253).

Rather, Austin indicated that she had minor needs for help with her "physical health problems," "dental care," and "symptoms," and that her "urgent" needs were "housing" and "income, or money management skills." (*Id.*). When asked what could be done to help her in those areas, she stated: "I owe a lot of people and I need help." (Tr. 254). She also indicated that her only barrier to accomplishing her plans was "money," and that she would no longer need help when she "file[s] bankruptcy." (*Id.*).

On June 4, 2009, Austin met with Bonnie Poicus, a licensed social worker at New Passages. (Tr. 257). In her report of that date, Poicus described Austin as being cooperative,

---

[2] However, Austin did report not liking to be around people she does not know. (Tr. 253).

6

friendly, appropriately dressed, with intact thought processes and calm motor activity. (Tr. 257-262). Although appearing sad, Austin had normal thought content and was properly oriented. Poicus's report discussed Austin's assertion that she could not work due to problems with her hip and with standing for extended periods of time. (*Id.*). Austin reported to Poicus that she had stopped working because she could not keep up the required pace "due to her hip problems and not being able to stand for long periods of time." (Tr. 257). Poicus assessed Austin as not being at risk for suicide. (Tr. 261). In the "Functional Summary" completed by Poicus, she indicated that her concerns were with Austin's social relationships and physical health, but she did not indicate a concern with Austin's cognitive functioning, social skills, work or responsibility. (Tr. 262). Poicus noted that Austin's hobbies included scrap-booking and genealogy. (*Id.*). On July 7, 2009, Austin was prescribed Xanax and Prozac by a New Passages physician. (Tr. 266). It appears Austin did not keep an August 7, 2009 appointment at New Passages. (*Id.*).

### b. *Consultative and Non-Examining Sources*

On March 17, 2008, Dr. Rom Kriauciunas, Ph.D., a state agency psychologist, opined that Austin's mental impairments were "not severe." (Tr. 227). He did note that she had been prescribed medicine for her depression. (Tr. 230). He also indicated that her restrictions in activities of daily living, maintaining social functioning and concentration, persistence and pace, were "mild." (Tr. 237). He found she had no episodes of decompensation. (*Id.*).

### C. Framework for Disability Determinations

Under the Act, DIB is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" in relevant part as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

7

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Schueunieman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 U.S. Dist. LEXIS 150240 at *21 (E.D. Mich. Dec. 6, 2011) *citing* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### D. The ALJ's Findings

Following the five-step format, the ALJ determined that Austin was not disabled because she was capable of performing her past relevant work as a secretary. (Tr. 19). At Step One, the

ALJ found that Austin had not engaged in substantial gainful employment since her alleged onset date. (Tr. 16). At Step Two, he determined that Austin's only severe impairments were related to her physical health: "degenerative joint disease of the lumbar and thoracic spine; diabetes []; [] pulmonary disease; Graves' disease; and obesity." (*Id.*). The ALJ specifically found that "the record does not establish depression as a severe impairment," and that Austin's "degree of mental limitations is mild at best…" (*Id.*). At Step Three, the ALJ held that Austin's impairments, alone or in combination, did not meet or medically equal a listed impairment. (Tr. 17). The ALJ next assessed Austin's RFC, determining that she could lift and carry up to 20 pounds occasionally and 10 pounds frequently, that she could stand and walk 4 hours in an 8-hour workday, and could sit for 6 hours per day, but not on a constant basis. (*Id.*). He further found that she could only occasionally operate foot controls, could perform postural activities on an occasional basis, but could never crawl or climb. (*Id.*). She also had to avoid concentrated exposure to various elements, and could not move machinery. (*Id.*). At Step Four, the ALJ determined that Austin's RFC assessment was consistent with her prior relevant work as a secretary, based on VE's hearing testimony. (Tr. 19). The ALJ concluded that Austin could return to her prior relevant work and thus was not disabled under the Act. (*Id.*).

  **E.**  **Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d

9

647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."

*Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

    **F.**    **Analysis**

        *1.*    *Whether the ALJ Erred in Not Finding Austin's Depression to be "Severe" at Step II is Irrelevant*

Austin argues that the ALJ "erred as a matter of law by concluding that Ms. Austin's depression was a non-severe impairment." Doc. #7 at 6. That argument asks the court to decide a question not germane to this case's ultimate disposition. As the ALJ noted in his decision, at Step II he was required to determine whether Austin had "**a** medically determinable impairment that is 'severe' or a combination of impairments that is 'severe.'" (Tr. 15) (citing 20 C.F.R. § 404.1520(c) and 416.920(c)) (emphasis added). *See also, supra*, p. 8. Thus, his finding that Austin suffered from "severe" physical impairments was all that was required for him to progress to Step III. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

In *Maziarz*, the plaintiff allegedly suffered from various impairments. At Step II, the Secretary found that Maziarz's heart conditions constituted a "severe" impairment under the regulations, but did not find his alleged cervical condition to be "severe." *Id.* at 242, 244. Ultimately, the Secretary found Maziarz not disabled. Maziarz argued on appeal that the Secretary erred by not finding his cervical condition to be severe. *Id.* at 244. The Sixth Circuit rejected that argument, holding that because the Secretary had found at least one other "severe" limitation, the severity of Maziarz's cervical condition was irrelevant for the Step II analysis:

> According to the regulations, upon determining that a claimant has one severe impairment, the Secretary must continue with the remaining steps in his disability evaluation as outlined above. In the instant case, the Secretary found that Maziarz suffered from the severe impairment of [heart disease]. Accordingly, the Secretary continued with the remaining steps in his disability determination. Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained

>sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error.

*Id.* at 244.  In other words, once the ALJ finds a severe impairment at Step II, he moves on to the remaining sequential steps where he considers the claimant's severe and non-severe impairments.  *Id.  See also Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008); *Fisk v. Astrue*, 253 Fed. Appx. 580, 584 (6th Cir. 2007) (noting that once the ALJ determines at least one severe impairment, he "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'") (citing Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *5); *Pompa v. Comm'r of Soc. Security*, 73 Fed. Appx. 801, 803 (6th Cir. 2003).  That is exactly what took place here, where the ALJ found Austin had certain "severe" impairments, then proceeded to the next sequential steps where he considered both her severe and non-severe impairments.  (Tr. 17-19).  Accordingly, the ALJ's finding that Austin's alleged depression was not a "severe" limitation cannot be grounds for remand.  *Id.*

> 2.  *Substantial Evidence Supports the ALJ's Findings that Austin Could Perform Her Past Relevant Secretarial Work*

Based largely on her argument about the severity of her depression, Austin argues that the ALJ erred by not asking the VE a proper hypothetical at the hearing.  Doc. #1 at 7.  However, the court finds that substantial evidence supported the hypothetical questions asked of the VE, as well as the ALJ's other findings regarding Austin's alleged disability.

> a.  Dr. Beck

Austin challenges the weight the ALJ gave to Dr. Beck's opinions.  An ALJ must give a treating physician's opinion controlling weight where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other

substantial evidence in the case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) *quoting* 20 C.F.R. § 404.1527(d)(2). If an ALJ declines to give a treating physician's opinion controlling weight, she must then determine how much weight to give the opinion, "by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) *citing Wilson*, 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(d)(2). The ALJ must give good reasons, supported by substantial evidence in the record, for the ultimate weight given to a treating source opinion. *Id.*, *citing Soc. Sec. Rul.* 96-2p, 1996 SSR LEXIS 9 at *12, 1996 WL 374188 at *5. An ALJ is not required to give any special weight to a treating source's conclusion that a claimant is disabled, as this conclusion is reserved to the Commissioner alone, based on all the evidence of record. 20 C.F. R. § 404.1527(e)(1), (e)(3).

Here, the ALJ gave good reasons for giving Dr. Beck's opinions only "little weight." (Tr. 19). In his determination that Austin's depression was not "severe," the ALJ noted that Dr. Beck's 2009 opinion finding Austin had "moderate to marked" restrictions in mental functioning conflicted with his February 2008 report and other treatment notes which indicated that she had only mild symptoms, and also was not supported by the record as a whole. (Tr. 16, 19). A review of those treatment notes and reports, *see supra*, pp. 5-6, shows the ALJ's characterization to be fair. Although the treatment notes do not necessarily show any improvement in Austin's depression, nor do they show a worsening of her condition. Moreover, the one note where Dr. Beck provided some additional detail about Austin's condition – the June 2008 note – appears to be based solely on Austin's subjective complaints. (Tr. 242). And, as noted above, it appears

13

that she did not receive any follow-up treatment from Dr. Beck after that June 2008 appointment.

Other evidence also supports the ALJ's discounting of Dr. Beck's June 2009 opinion. First, that opinion was nothing more than a few checked boxes with no supporting medical evidence or explanation, whereas his February 2008 opinion noted that Austin had intact and appropriate thoughts, with good attention and memory, and that she could relate and communicate adequately. *Compare* Tr. 248 with Tr. 225. *See also Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2) and (3). The June 2009 opinion's value is also called into question by the fact that it stated that Austin's supposedly "moderate-to-marked" limitations had existed for "over 5 years," when his February 2008 opinion had concluded she had no limitations in function due to a mental condition. (Tr. 225). Especially since the June 2009 report was not supported by any new medical evidence or other information which might explain those apparently irreconcilable findings, the ALJ was not bound by it. *See Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993). Finally, since it does not appear that Dr. Beck had seen Austin since June 2008, he may well not have been a "treating physician" under the Act when he issued his June 2009 report. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) ("A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'") (quoting 20 C.F.R. § 404.1502).

### b.    New Passages

Austin also argues that remand is proper because the ALJ's decision did not reference her treatment at New Passages in June 2009. While Austin is correct that the decision does not reference New Passages, that alone does not necessarily warrant remand. SSR 06-3p relates to the weight an ALJ may give to "Other Evidence from Sources Who Are Not 'Acceptable

Medical Sources,'" including licensed social workers like Poicus, whose opinions are not entitled to controlling weight. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a); SSR 06-3p; *Holcomb v. Astrue*, 389 Fed. Appx. 757, 759, n. 2 (10th Cir. 2010) ("Licensed clinical social workers are considered 'other sources,' as defined in 20 C.F.R. § 404.1513(d) and 416.913(d)…", "they cannot, by themselves, establish a medically determinable impairment, constitute a medical opinion, or be considered the opinions of a treating source."). The relevant Ruling provides that the ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *SSR 06-03p*, 2006 WL 2329939 at *6 (Aug. 6, 2006). In *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532 (6th Cir. 2007), the Sixth Circuit found that the ALJ committed error (though not reversible error for reasons not at issue here) by not discussing the reports of chiropractors who were "other sources" under Ruling 06-3p:

> We have previously held that an ALJ has discretion to determine the proper weight to accord opinions from "other sources" such as nurse practitioners. However…[Ruling 06-3p] … clarifies how the Commissioner is to consider opinions and other evidence from sources who are not "acceptable medical sources." While the ruling notes that information from "other sources" cannot establish the existence of a medically determinable impairment, the information "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function."

*Id.* at 541. Thus, although there is no requirement that the ALJ must expressly discuss every piece of record evidence, *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006), the court finds that the ALJ should have discussed the New Passages records.

15

Remand, however, is not required here because the ALJ's decision provides a sufficiently detailed analysis to allow the reader to follow his decision, and to know that remand to consider the few New Passages documents in the record would not change the case's outcome. *See Miller v. Comm'r of Social Security*, 2009 WL 997312, at *3 (E.D. Mich. Apr. 14, 2009) (declining remand despite finding that ALJ should have discussed chiropractors' opinions, where such remand would not "have made any difference"). First, as noted above, the ALJ properly gave lesser weight to Dr. Beck's opinions which were not supported by medical evidence. There is no reason to think that the ALJ would treat Poicus's opinions, which also appear to be based only on Austin's subject complaints, any differently.

Second, to the extent Poicus actually rendered any opinions about the impact of Austin's depression on her mental capabilities, those opinions are not inconsistent with the ALJ's findings about her abilities to perform her prior relevant work. For instance, Poicus found that Austin's thought process was intact, her thought content was normal, and that she was properly oriented. (Tr. 257). And, she did not indicate a concern about Austin's cognitive functioning, work or responsibility. (Tr. 262). Also, Poicus noted Austin's assertion that her worst depression was "years ago," but at least as of February 2008, Dr. Beck had found Austin to have no limitations in function due to a mental condition. (Tr. 225). Again, since the ALJ properly credited that February 2008 report, nothing in Poicus's report could have changed the analysis.

Finally, while the New Passages documents include a prescription issued to Austin for Prozac and Xanax, there was no accompanying evidence to suggest that Austin could not perform the work of a secretary while on those medications. (Tr. 266, 269-70). Indeed, Austin was taking Prozac when Dr. Beck concluded that she had no limitations in function due to a mental condition. (Tr. 187-88, 225, 242).

16

In sum, it is clear that any error by the ALJ in not expressly referencing the New Passages documents was harmless and does not warrant remand. *Miller*, 2009 WL at *3.

## III. CONCLUSION

For the foregoing reasons, it is RECOMMENDED that Defendant's motion for summary judgment [10] be GRANTED, that Plaintiff's motion for summary judgment [7] be DENIED, and that the Commissioner's findings be AFFIRMED.


Dated: March 19, 2012　　　　　　　　　　　s/David R. Grand
Ann Arbor, Michigan　　　　　　　　　　　　DAVID R. GRAND
　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge


## **NOTICE**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

**CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 19, 2012.

                                                    s/Felicia M. Moses
                                                    FELICIA M. MOSES
                                                    Case Manager